STEVEN L. FRIEDLANDER (SBN 154146)
GALEN P. SALLOMI (SBN 306743)
SV EMPLOYMENT LAW FIRM PC
160 Bovet Road, Suite 401
San Mateo, California 94402
Telephone:      (650) 265-0222
Facsimile:      (650) 265-0223
Email:          sfriedlander@svelf.com
                gsallomi@svelf.com

Attorneys for Plaintiff TRUSTLABS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRUSTLABS, INC., a Delaware Corporation,<br><br>                    Plaintiff,<br><br>          v.<br><br>DANIEL JAIYONG AN,<br><br>                    Defendant. | Case No. 21-2606<br><br>**COMPLAINT FOR:**<br>**(1) Violation of 18 U.S.C. § 1030**<br>**(2) Violation of 18 U.S.C. § 2701**<br>**(3) Violation of California Penal Code § 502**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff TrustLabs, Inc. ("TrustLabs," the "Company" or "Plaintiff"), by and through its undersigned counsel, alleges as follows against defendant Daniel Jaiyong An ("Jaiyong" or "Defendant"):

### INTRODUCTION

1.  Jaiyong is TrustLabs' former CEO/President and one of its four co-founders.  TrustLabs determined that he was no longer equipped to execute the duties of his positions with the Company.  Accordingly, TrustLabs asked Jaiyong to voluntarily step aside.  Jaiyong retaliated by, *inter alia*, maliciously and intentionally deleting the Company's Slack messaging system.  (Slack is a messaging system that is used to allow groups of people to communicate and conduct business operations without the use of email.)  TrustLabs attempted to regain access to its Slack system, immediately protected its other assets, and, as a result of Jaiyong's misconduct and failure to perform his duties as CEO/President, removed Jaiyong from its Board of Directors and terminated his employment.

2.  Jaiyong's actions violated both federal and state laws protecting access to electronic systems.  As a result, TrustLabs is entitled to receive damages, statutory penalties, punitive damages, injunctive relief, and attorneys' fees.

### PARTIES

3.  TrustLabs is a cryptocurrency company that is incorporated in Delaware and headquartered in Willits, California.  TrustLabs was incorporated in 2015.  A majority of its employees resided in California during the time-period at issue.

4.  TrustLabs, in collaboration with its various wholly-owned subsidiaries, built a platform for cryptocurrencies that, unlike most cryptocurrencies, are designed to facilitate a smoother integration between the current financial paradigm and blockchain technology.  Specifically, TrustLabs' cryptocurrencies are backed by various assets, including fiat currencies like the United States Dollar.  These assets are stored in bank accounts that are owned and operated in escrow by various independent banks and trust companies.

5.  Jaiyong is an individual.  His last known residence is in Texas.  From TrustLabs' incorporation in 2015 until Jaiyong's employment termination in 2020, he was an employee of TrustLabs, and served as its CEO/President and on its Board of Directors.

COMPLAINT                                                                                     Case No. 21-2606

**JURISDICTION AND VENUE**

6.    This Court has original subject matter jurisdiction under 28 U.S.C. § 1331 over TrustLabs' claims for breach of the Computer Fraud and Abuse Act ("CFAA") and the Stored Communications Act ("SCA") because these claims arise under the laws of the United States.

7.    This Court has supplemental or pendent jurisdiction over TrustLabs' claim under the California Comprehensive Computer Data Access and Fraud Act ("CCDAFA") pursuant to 28 U.S.C. § 1367 because that claim is so closely related to TrustLabs' federal law claims that they form part of the same case or controversy.

8.    Jaiyong is subject to personal jurisdiction in this District because he is or was a citizen of California and his residence was in California during at least some of the relevant time period.  In addition, the intended and actual detrimental effects of Jaiyong's actions occurred in this District.

9.    Further, this Court has personal jurisdiction over Jaiyong pursuant to FRCP Rule 4(k)(1)(A) because Jaiyong would be subject to the jurisdiction of the California Superior Court under California Penal Code § 502(j), which confers personal jurisdiction because Jaiyong accessed and/or attempted to access at least one computer, computer system, or computer network that was, upon information and belief, located within California.

10.    Venue is proper in this District, pursuant to 28 U.S.C. §§ 1391(b)(2)–(3), because the relevant acts, omissions, and events occurred in the District and/or because there is no district in which an action may otherwise be brought and Jaiyong is subject to this Court's personal jurisdiction.

11.    Jaiyong conducted substantial business in California while working on behalf of TrustLabs. Upon information and belief, Jaiyong was a resident of California from 2015 to at least Q1 2020.  Jaiyong's last known residence is in Texas.

12.    As a result of Jaiyong's intentional and malicious abuse of his privileges as the sole administrator of TrustLabs' Slack account, numerous TrustLabs employees who were located in California were prevented from communicating with each other during the time the Slack account was disabled.  This interrupted TrustLabs' business operations and caused material harm within California.  Shortly thereafter, Jaiyong attempted to sabotage TrustLabs' other digital assets, many of which rely upon servers that are, upon information and belief, located in California.  These actions were directed into California because

they targeted TrustLabs, which has a California headquarters, and numerous California based TrustLabs employees.

## GENERAL ALLEGATIONS

### Jaiyong Was no Longer Able to Fulfil his Duties, so TrustLabs Terminated his Employment

13.    Jaiyong co-founded TrustLabs in 2015.   From TrustLabs' incorporation in 2015 until Jaiyong's termination in 2020, he was employed as CEO/President of TrustLabs and served on its Board of Directors.

14.    In early 2020, multiple employees noticed instances of Jaiyong making major company decisions unilaterally and acting against the best interests of the Company.   For example, between January and June of 2020, while the Company was trying to launch three different products, Jaiyong:

a.    refused to name project managers to or develop project plans for major company initiatives in Q1 2020, against the advice of the management team, which resulted in missed deadlines, inefficient resource allocation, and lack of internal controls;

b.    unilaterally declared a policy of video recording all Company meetings, resulting in additional post facto work to address the privacy concerns of Company employees and the specific GDPR requirements of the Company's European office;

c.    launched a message board application (forum.trusttoken.com) (the "Forum") to communicate with SAFT purchasers and sent invitation links to SAFT purchasers without prior discussion with the management team and legal counsel, which required the Company to urgently work to add terms & conditions and controls to ensure that Company data was not released to third parties; and

d.    posted copies of email communications with a SAFT purchaser, with whom the Company was negotiating a settlement of a business and legal dispute, which included the purchaser's personally identifiable information on the Forum and implied the purchaser was blackmailing Jaiyong, which led to the purchaser threatening further legal action for defamation.

15.    Based on concerns arising from these and other events, multiple employees and stockholders of the Company approached senior Company executives to express their belief that Jaiyong

4

should be removed from his role as CEO.  During the week of June 29, 2020, Rafael Cosman, CTO and co-founder, and Alex de Lorraine, COO & Head of Finance, shared these concerns with Jaiyong and began to discuss the possibility of reassigning the duties of CEO/President to Mr. Cosman.

16.     By July 3, 2020, Mr. Cosman and Mr. de Lorraine were left with the impression that Jaiyong would provide TrustLabs with a resignation letter by 4 pm Pacific Time on Monday, July 6th.  Jaiyong never provided TrustLabs with a resignation letter.  Instead, at 6:36 pm on July 6th, the Company's Slack messaging system was deleted.

17.     The Company's Slack services were registered under Jaiyong's trusttoken.com email address and Jaiyong was the sole administrator of the Company's Slack platform.  Jaiyong was the only person at the Company who had the physical and technical access to delete the Slack platform.  In the week leading up to the deletion of the Slack platform the Company's IT Security Department created a backup copy of prior messages because of concerns about Jaiyong's increasingly erratic behavior.

18.     TrustLabs employees use Slack as their primary means of internally communicating, conducting day-to-day business operations, as well as managing critical technical infrastructure.  As such, the service is critical to the operations of TrustLabs' ongoing business.

19.     Jaiyong knew that the Company's Slack messaging system was a critical system and, upon information and belief, intentionally and maliciously deleted the system with the specific intent to harm TrustLabs.  Jaiyong's actions caused all TrustLabs employees to lose access to Slack and halted several critical Company workflows, which interrupted TrustLabs' business operations and caused harm to the Company.

20.     TrustLabs immediately began extraordinary efforts to protect its other Company assets, including by securing Company computer systems, changing login information, confirming that digital assets required sign-off of multiple individuals to be moved, and removing Jaiyong's access to social media accounts.  TrustLabs incurred significant costs to protect its assets from Jaiyong, including the value of time spent by the Company's IT Security Department.  In addition, TrustLabs Legal and Finance Departments spent significant time informing business partners of Jaiyong's removal and updating counterparty contact information, causing many existing contracts to be reviewed or renegotiated.

21.     On the evening of July 6th, within a few hours after TrustLabs discovered Jaiyong deleted

1   the Slack system, TrustLabs' Board of Directors held an emergency meeting (after normal business hours)

2   to remove Jaiyong from the Board of Directors and terminate his employment as CEO/President, effective

3   on July 7, 2020.

4   22.   On July 8, 2020, TrustLabs sent Jaiyong a notice of termination and demanded that he return

5   Company-issued equipment in his possession, including an Apple MacBook Pro laptop, an Apple iPad Pro

6   tablet computer, and an Apple iPhone, via FedEx courier service.

7                    **Jaiyong Continued his Campaign to Harm TrustLabs**

8   23.   Between July 11 and July 13, 2020, Jaiyong attempted to access the Company's customer

9   email and contact management system on the HubSpot platform and the Company's account on the Reddit

10   social media website using various Company-issued email addresses, including danny.an@trusttoken.com,

11   jai.an@trusttoken.com, and danny.an@zentrust.com, which had all been secured and monitored by the

12   Company's IT Security Department upon Jaiyong's termination.

13   24.   On July 14, 2020 TrustLabs sent Jaiyong a cease and desist notice (the "July 14 Cease &

14   Desist") via email to Jaiyong's personal email address putting Jaiyong on notice that the Company was

15   aware of the Jaiyong's deletion of Slack access on July 6, 2020 and subsequent attempts to access the

16   Company's HubSpot and Reddit platforms, and demanding that the Jaiyong stop attempting to access

17   Company systems.

18   25.   The July 14 Cease & Desist also requested that Jaiyong return all Company-issued

19   equipment and contained a prepaid shipping label for the same purpose.

20                            **FIRST CLAIM**

21                  **(Violation of 18 U.S.C. § 1030 - Against Jaiyong)**

22   26.   TrustLabs hereby realleges the allegations set forth in Paragraphs 1 through 25 above and

23   incorporates them as though set forth herein in full.

24   27.   The federal Computer Fraud and Abuse Act ("CFAA") prohibits a variety of actions

25   involving unauthorized access or damage to computers and information systems.  As applicable here, an

26   individual violates 18 U.S.C. § 1030(a)(5)(i) if he transmits "a program, information, code, or command"

27   that, without authorization, intentionally causes damage—*i.e.* "impairment to the integrity or availability

28   of data, a program, a system, or information."

28.     Jaiyong violated the CFAA when he intentionally and maliciously disrupted access to Company systems, including Slack, and when Jaiyong attempted to access other Company systems.

29.     TrustLabs suffered more than the statutory threshold of $5,000 in loss during the one-year period following Jaiyong's actions, including the cost of responding to Jaiyong's actions, securing TrustLabs' assets, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service.

30.     Punitive damages are appropriate because Jaiyong disrupted and attempted to disrupt TrustLabs' computer systems with the intent to harm the Company, in retaliation for the Company's decision to remove him as CEO/President, and thus he acted with malice.

WHEREFORE, TrustLabs prays for judgment as set forth hereinafter.

## SECOND CLAIM

### (Violation of 18 U.S.C. § 2701 - Against Jaiyong)

31.     TrustLabs hereby realleges the allegations set forth in Paragraphs 1 through 30 above and incorporates them as though set forth herein in full.

32.     The federal Stored Communications Act ("SCA") generally prohibits obtaining, altering, or preventing authorized access to an electronic communication held in electronic storage by intentionally exceeding authorization to access such a facility.  18 U.S.C. § 2701(a)(1)-(2).  A "subscriber" to an electronic communication service, "or other person aggrieved" may bring a civil action against a knowing or intentional violator of the SCA.  18 U.S.C. § 2707(a).

33.     Jaiyong violated the SCA when he knowingly and intentionally disrupted access to Company systems, including Slack, and when Jaiyong attempted to access other Company systems.

34.     Punitive damages are appropriate because Jaiyong disrupted and attempted to disrupt TrustLabs' computer systems with the intent to harm the Company, in retaliation for the Company's decision to remove him as CEO/President, and thus he acted with malice.

WHEREFORE, TrustLabs prays for judgment as set forth hereinafter.

## THIRD CLAIM

**(Violation of California Penal Code § 502 - Against Jaiyong)**

35.    TrustLabs hereby realleges the allegations set forth in Paragraphs 1 through 34 above and incorporates them as though set forth herein in full.

36.    The California Comprehensive Computer Data Access and Fraud Act ("CCDAFA") imposes liability on any person who, *inter alia*:

    a.    Knowingly accesses and without permission takes, copies, or makes use of any data from a computer, computer system, or computer network [ . . . ]

    b.    Knowingly accesses and without permission . . . damages, deletes, or destroys any data, computer software, or computer programs [ . . .]

    c.    Knowingly and without permission disrupts or causes the disruption of computer services or denies or causes the denial of computer services to an authorized user of a computer, computer system, or computer network.

    d.    Knowingly and without permission accesses or causes to be accessed any computer, computer system, or computer network.

37.    The "owner or lessee of the computer . . . or data who suffers damage or loss by reason of a violation. . . may bring a civil action against the violator . . ." Cal. Penal Code § 502(e)(1).  Additionally, the court may award attorneys' fees and, if the defendant acted with "malice," the court "may additionally award punitive or exemplary damages." *Id.* at § 502(e)(2), (4).  A system administrator such as Jaiyong "who uses his or her authorized access to a computer system to disrupt or deny computer services to another lawful user" violates CCDAFA.  A computer service expressly includes "electronic mail services [and] electronic message services" like Slack.  *Id.* at § 502(b)(4).

38.    Jaiyong violated the CCDAFA when he intentionally and maliciously disrupted access to Company systems, including Slack, and when Jaiyong attempted to access other Company systems.

39.    The Company suffered harm because it incurred costs when it responded to Jaiyong's actions by protecting other computer systems and its employees were unable to communicate or conduct critical business processes while the Slack system was unavailable.

40.    Punitive damages are appropriate because Jaiyong disrupted and attempted to disrupt TrustLabs' computer systems with the intent to harm the Company, in retaliation for the Company's

decision to remove him as CEO/President, and thus he acted with malice.

WHEREFORE, TrustLabs prays for judgment as set forth hereinafter.

## **PRAYER FOR RELIEF**

**WHEREFORE**, TrustLabs prays for judgment against Jaiyong as follows:

1.    For general and compensatory damages, according to proof;

2.    For punitive damages as provided by the CFAA, the SCA, and the CCDAFA;

3.    For statutory penalties pursuant to the CFAA, the SCA, and the CCDAFA;

4.    For both pre- and post-judgment interest on any amounts awarded pursuant to applicable law;

5.    For TrustLabs' costs;

6.    For TrustLabs' attorneys' fees pursuant to applicable law, including the CFAA, the SCA, and the CCDAFA;

7.    For declaratory relief; and

8.    For such other and further relief as the court may deem just and proper.


Dated:  April 9, 2021                                    SV EMPLOYMENT LAW FIRM PC


By:    /s/ Steven L. Friedlander
                                                                       Steven L. Friedlander
                                                                       Galen P. Sallomi
                                               Attorneys for Plaintiff TRUSTLABS, INC.


**PLAINTIFF DEMANDS TRIAL BY JURY.**

Dated:  April 9, 2021                                    SV EMPLOYMENT LAW FIRM PC


By:    /s/ Steven L. Friedlander
                                                                       Steven L. Friedlander
                                                                       Galen P. Sallomi
                                               Attorneys for Plaintiff TRUSTLABS, INC.

COMPLAINT                                                                                    Case No. 21-2606