1
2
3
4
5

IN THE UNITED STATES DISTRICT COURT

6

FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8  | TRUSTLABS, INC.,

Case No.  21-cv-02606-CRB

9  | Plaintiff,

10  | v.

**ORDER DENYING DEFENDANT'S MOTION FOR LEAVE TO FILE COUNTERCLAIMS**

11  | DANIEL JAIYONG AN,

12  | Defendant.

13      In 2021, Plaintiff TrustLabs, Inc. ("TrustLabs") sued Defendant Daniel Jaiyong An

14  | ("Jaiyong"), its former CEO/President, for violating the Federal Computer Fraud and

15  | Abuse Act, Stored Communications Act, and California Comprehensive Computer Data

16  | Access and Fraud Act.  See Compl. ¶¶ 26–40 (dkt. 1).  TrustLabs alleges that, after

17  | TrustLabs executives asked for Jaiyong's resignation as CEO/President, Jaiyong retaliated

18  | by "intentionally and maliciously" deleting TrustLabs' Slack messaging system.[1]  Id. ¶ 19.

19  | TrustLabs also alleges that Jaiyong attempted to access other company systems after his

20  | termination.  Id. ¶ 23–24.

21      The deadline to amend his pleadings as a matter of course has passed, so Jaiyong

22  | moves for leave to file counterclaims ("Mot. for Leave") (dkt. 92).  Jaiyong seeks leave to

23  | add nine counterclaims against TrustLabs and three Counter-Defendants.[2]  See

24

---

25  | [1] Slack is a messaging system that allows groups of people to communicate without the use

26  | of email.  Slack was used by TrustLabs' employees to communicate internally and conduct
business operations.  Compl. ¶ 18; Plaintiff's Opposition ("Pl. Opp.") (dkt. 94) at 2.

27  | [2] The nine counterclaims are: (1) breach of contract, (2) retaliation under California Labor

28  | Code § 1102.5, (3) wrongful termination in violation of public policy under California
Labor Code § 1102.5, (4) coercion, (5) unjust enrichment, (6) securities law violation
under § 25401 of the California Corporate Securities Law of 1968 and under 17 C.F.R. §

United States District Court
Northern District of California

Counterclaims ("CC") (dkt. 92-1).  As discussed below, the Court DENIES Jaiyong's Motion for Leave.

## I.      FACTUAL BACKGROUND

TrustLabs is a cryptocurrency company co-founded by Jaiyong in 2015.[3]  Compl. ¶ 1.  From 2015 to 2020, Jaiyong was an employee of TrustLabs, served as its CEO/President, and served on its Board of Directors.  Id. ¶ 5.  Jaiyong remains a current stockholder of the Company.  CC ¶¶ 162, 235.

### A.      TrustLabs' Allegations

TrustLabs alleges the following:

In early 2020, Jaiyong began "making major company decisions unilaterally" and acting against TrustLabs' best interests.  Compl. ¶ 14.  For example, Jaiyong "refused to name project managers to or develop project plans for major company initiatives in Q1 2020, against the advice of the management team," "unilaterally declared a policy of video recording all Company meetings, resulting in additional post facto work" to address GDPR privacy concerns, "launched a message board application" to communicate with purchasers "without prior discussion with the management team and legal counsel," and other alleged wrongful conduct.  Id.  Multiple employees and stockholders expressed to TrustLabs' executives that Jaiyong should be removed as CEO.  Id. ¶ 15.

During the week of June 29, 2020, Rafael Cosman ("Cosman"), CTO and co-founder of TrustLabs, and Alex de Lorraine ("de Lorraine"), COO and Head of Finance, spoke with Jaiyong and asked him to voluntarily step aside as CEO and president.  Id. ¶ 1, 15–16.  They expected to receive Jaiyong's resignation letter by July 3, 2020.  Id.  Jaiyong

---

[3] 240.10b-5, (7)  intentional infliction of emotional distress ("IIED"), (8) breach of fiduciary duty, and (9) aiding and abetting breach of fiduciary duty.  See generally CC ¶¶ 264–351.  The three counter-defendants that Jaiyong seeks to add are: (1) Rafael Cosman, co-founder and TrustLabs Board member, (2) Alex de Lorraine, COO and former TrustLabs Board member, and (3) Tom Shields, former chairman of the TrustLabs Board.  Id. ¶ 2.

[3] TrustLabs offers a platform for cryptocurrencies.  It tokenizes real-world assets and stores them on a blockchain.  See Compl. ¶ 4; CC ¶¶ 25–28.

United States District Court
Northern District of California

never provided his resignation letter.  Id.

Instead, on July 6, 2020, Jaiyong deleted the company's Slack messaging system. Id. ¶ 16–17.  TrustLabs' Slack services were registered under Jaiyong's company email, Jaiyong was the sole administrator of the company's Slack services account, and he was the only person who had access to delete the Slack platform.[4]  Id.  Slack was "critical to the operations of TrustLabs" because TrustLabs used the Slack platform as its primary means of internal communication.  Id. ¶ 18.

After Jaiyong deleted the platform, "TrustLabs immediately began extraordinary efforts to protect its other Company assets, including by securing [its] computer systems, changing login information, confirming that digital assets required sign-off of multiple individuals to be moved, and removing Jaiyong's access to social media accounts. TrustLabs incurred significant costs to protect its assets from Jaiyong, including the value of time spent by the Company's IT Security Department."  Id.  ¶ 20.

Once TrustLabs' executives discovered that Jaiyong had deleted the company's Slack system, the Board of Directors held an emergency meeting to remove Jaiyong from the Board and terminate his employment, effective on July 7, 2020.  Id.  ¶ 22.

On July 8, 2020, TrustLabs sent Jaiyong a notice of termination and demanded that he return his TrustLabs laptop, tablet, and iPhone.  Id.  Jaiyong then attempted to tamper with various other company systems and platforms.  Id. ¶ 23.

In April 2021, TrustLabs sued Jaiyong, asserting claims under the Computer Fraud and Abuse Act and the Stored Communications Act.  See id. ¶ 6.

**B.    Jaiyong's Proposed Counterclaims**

On July 17, 2023, Jaiyong filed this Motion for Leave alleging the following in connection with his proposed counterclaims:

In 2015, Jaiyong co-founded TrustLabs with Cosman.  CC ¶ 4.  From 2017 to 2018,

---

[4] TrustLabs' IT Security Department had already created a backup copy of prior messages from the Slack platform because of concerns about Jaiyong's "increasingly erratic behavior."  Id. ¶ 17.

United States District Court
Northern District of California

Jaiyong and Cosman offered Simple Agreements for Future Tokens (SAFTs) to investors, which were intended to fund a "TrustToken platform" where clients could interact using Trust tokens. Id. ¶¶ 4, 40. The SAFTS gave investors the right to receive "TRU tokens" (a cryptocurrency) upon the launch of the TrustLabs (then known as TrustToken) platform. Id. ¶ 4.

In 2018, TrustLabs launched its first product: "TrueUSD."[5] Id. ¶ 45. TrueUSD is a cryptocurrency whose value is linked to the U.S. dollar.[6] Id. ¶¶ 6, 29. Around November 21, 2020, TrustLabs issued "TRU tokens" under the SAFTs to accredited investors.[7] Id. ¶ 48. However, according to Jaiyong, the "TRU tokens," as issued, differed substantially from the TrustToken platform that investors had been promised. Id. ¶¶ 38–49. Jaiyong alleges that "the TRU Tokens as issued did not match the TrustToken platform as originally contemplated by [Jaiyong] and communicated to investors at the time of their investments." Id. ¶ 49. Jaiyong became concerned that the SAFT investors would be "materially disadvantaged." Id. ¶ 69.

Jaiyong believed that TrustLabs was violating securities laws. Id. ¶ 72. Jaiyong wanted to offer investors updated disclosures and the option of a refund. Id. Despite Cosman and de Lorraine rejecting this proposal, id. ¶ 170, Jaiyong alleges that he "began taking steps toward sharing updated risk disclosures and a refund offer." Id. ¶ 92. He also alleges that, in an effort to "increase[e] transparency to SAFT investors," he switched TrustLabs' primary communication system from Slack to Discord and Discourse.[8] Id. ¶¶

---

[5] Throughout Jaiyong's proposed counterclaims, he interchangeably references "TrueUSD" and "TrueRewards." See generally CC. "TrueUSD" was called "TrueRewards" in 2020 and "has since morphed into a different product and was rebranded as TrueFI." CC ¶ 56. For clarity, this order will refer to it as "TrueUSD" throughout.

[6] TrueUSD is a "stablecoin." CC ¶ 45. A stablecoin is a virtual currency whose value is tied to that of another "stable" currency, commodity, or financial instrument, such as the U.S. dollar. Investopedia, Stablecoin. https://www.investopedia.com/terms/s/stablecoin.asp (last visited Feb. 15, 2024).

[7] TrueUSD and TRU tokens were different cryptocurrencies offered by TrustLabs.

[8] Discord and Discourse are messaging systems similar to Slack.

93, 190–91.  Additionally, Jaiyong believed that switching from Slack—a paid subscription service—to Discord and Discourse—no-cost options—would reduce unnecessary costs.  Id. ¶ 189.

Jaiyong alleges that Cosman voted him out as CEO in July 2020 so that TrustLabs could "proceed in breaking securities law."  Id. ¶¶ 9, 124, 132, 135.  Jaiyong alleges that Cosman offered de Lorraine and Tom Shields ("Shields") promotions in exchange for voting to remove Jaiyong as CEO.  Id.  ¶ 171–75.  He further alleges he was "removed so [Rafael Cosman, Alex de Lorraine, Tom Shields] could avoid their disclosure obligations under securities laws and self-enrich, at the expense of the original SAFT investors."  Id. ¶ 10.  Jaiyong further alleges that "[Cosman] and others . . . enriched themselves by granting themselves TRU tokens. . . [and] transferr[ing] assets to a Cayman Islands entity they control."  Id. ¶ 11.[9]

Additionally, Jaiyong alleges that "post ousting," TrustLabs and/or Counter-Defendants made "legal threats" against him for discussing the alleged securities law violations with SAFT investors.[10]  Id. ¶ 166.  He alleges that TrustLabs and/or Counter-Defendants "initiate[d] a call" from the Frisco Police Department to Jaiyong's "mother, father, and brother . . . to initiate threats to his family."  Id. ¶ 178.  The Frisco Police Department purportedly called Jaiyong's mother the week of July 20, 2020, and said "to do what [TrustLabs] wants[,] or [TrustLabs] will press criminal charges."  CC ¶ 178.  Days after that call, Jaiyong emailed TrustLabs executives to notify them that he was "in the midst of filing" a TCR report with the SEC Whistleblower Program.  Id. ¶ 169.  Cosman allegedly then called Jaiyong's brother threatening "legal action would be taken upon [Jaiyong] unless [he] does what [TrustLabs] wants."  Id.

[9] In his proposed counterclaims, Jaiyong also alleges that Cosman has a "history of law breaking."  See generally CC ¶¶ 102–16.  This order does not address those allegations because they are not relevant to the proposed counterclaims.

[10] Jaiyong does not specify which of the three Counter-Defendants made the alleged legal threats.

Thereafter, Jaiyong received a Notice of Legal Claims ("Notice") from TrustLabs' attorney.  Id. ¶ 186.  The Notice informed Jaiyong of the claims that TrustLabs would file against him.  Id.  The Notice also proposed a settlement offer.  Id.  Jaiyong refused the offer because he believed the offer undervalued his TrustLabs shares.  Id.  In April of 2021, TrustLabs filed this lawsuit against Jaiyong.  See Compl.

On June 14, 2023, TrustLabs sent Jaiyong a DocuSign regarding a proposed merger which would redomicile TrustLabs and all its assets to Switzerland.  CC ¶ 161.  Jaiyong alleges that this merger prompted him to file a complaint with the Court of Chancery of Delaware on July 13, 2023.[11]  Id. ¶ 163; see also Pl. Opp., Ex. 1 (dkt. 94-1).  Thereafter, Jaiyong filed this Motion for Leave.  Id.

## II.     PROCEDURAL BACKGROUND

TrustLabs initiated this lawsuit on April 9, 2021, alleging that Jaiyong violated the Computer Fraud and Abuse Act ("CFAA"), Stored Communications Act ("SCA"), and California's Comprehensive Computer Data Access and Fraud Act ("CCDAFA"), when he intentionally and maliciously deleted TrustLabs' Slack messaging system.  See generally Compl.

### A.     Prior Motions

On May 17, 2021, Jaiyong moved to dismiss or quash TrustLabs' complaint for invalid service of summons.  Dkt. 13.  The Court denied Jaiyong's motion because TrustLabs properly served Jaiyong at his Texas address.  Dkt. 21.  Jaiyong then filed his Answer to the Complaint.  Dkt. 24.

In October of 2022, Jaiyong's most recent counsel filed a Motion to Withdraw as Counsel for Defendant.  Dkt. 50.  The Court granted the motion.  Dkt. 53.  Jaiyong has

---

[11] Jaiyong brought this state action against TrustLabs, Cosman, de Lorraine, and Shields (the same Counter-Defendants listed in the proposed counterclaims).  Pl. Opp. at 4.  The suit alleged breach of fiduciary duty, breach of contract, unjust enrichment and corporate waste, and oppression of a minority shareholder.  Dkt 94-1 ¶¶ 13–21, 278–80, 285–98, 301–03.  Jaiyong sought declaratory relief, accounting, equitable recission, and declaration of judgment on shareholder rights.  Id. ¶¶ 281–84, 299–300, 304–09.

been proceeding pro se ever since.

### B.     Case Management

The Court entered an initial scheduling order on March 14, 2022, setting various deadlines for discovery and dispositive motions.  Dkt. 38.  Since then, the Court has granted multiple requests extending the deadlines for discovery and dispositive motions. Dkts. 48, 58, 68, 91.  None of the scheduling orders included a deadline to amend pleadings.  Most relevant to this motion, the Court most recently set the following cut-off dates: (1) the last day of expert discovery on January 16, 2023, dkt. 48, (2) the close of fact discovery on October 18, 2023, dkt. 91, and (3) the last day to hear dispositive motions on November 20, 2023, id.

On June 16, 2023, TrustLabs informed the Court that it was nearly prepared to file a dispositive motion following Jaiyong's deposition.  Dkt.  79.  On June 19, 2023, after several extensions spanning over a year and TrustLabs informing the Court of its intention to file a dispositive motion, Jaiyong advised the Court—for the first time—of his intention to file a Motion for Leave for Counterclaims.  Dkt. 80.

### C.     Motion for Leave

On July 17, 2023—over two years after TrustLabs first filed suit—Jaiyong filed this Motion for Leave.  Dkt. 92.  Jaiyong seeks to add three Counter-Defendants: (1) Rafael Cosman, co-founder and TrustLabs Board member, (2) Alex de Lorraine, COO and former TrustLabs Board member, and (3) Tom Shields, former chairman of the TrustLabs Board. CC ¶ 2.  Jaiyong seeks leave to add the following nine counterclaims:

| | |
|---|---|
| Count I. | Breach of Contract |
| Count II. | Retaliation under California Labor Code § 1102.5 |
| Count III. | Wrongful Termination in Violation of Public Policy under California Labor Code § 1102.5 |
| Count IV. | Coercion |
| Count V. | Unjust Enrichment |

| | |
|---|---|
| Count VI. | Securities Law Violation under 17 C.F.R. § 240.10b-5 and under |
| | § 25401 of the California Corporate Securities Law of 1968 |
| Count VII. | Intentional Infliction of Emotional Distress |
| Count VIII. | Breach of Fiduciary Duty |
| Count VIV. | Aiding and Abetting Breach of Fiduciary Duty |

See CC ¶¶ 264–351.

## III.   LEGAL STANDARD

If a party misses the deadline to amend its pleading as a matter of course, the "party may amend its pleading only with . . . the court's leave."[12] Fed. R. Civ. P. 15(a)(2).  A court should freely give leave to amend "when justice so requires."  Id.  The Ninth Circuit has instructed that the policy favoring amendment "should be applied with 'extreme liberality.'"  United States v. Webb, 655 F.2d 977, 979 (9th Cir. 1981) (quoting Rosenberg Brothers & Co. v. Arnold, 283 F.2d 406, 406 (9th Cir. 1960) (per curiam)).  Pro se plaintiffs should be granted leave to amend unless it is clear that defects in the pleading cannot be cured by amendment.  Lopez v. Smith, 203 F.3d 1122, 1130–31 (9th Cir. 2000); Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995).  However, leave to amend "is not to be granted automatically."  In re W. States Wholesale Nat. Gas Antitrust Litig., 715 F.3d 716, 738 (9th Cir. 2013) (quoting Jackson v. Bank of Haw., 902 F.2d 1385, 1387 (9th Cir. 1990)).

A court considers five factors to assess whether to grant leave to amend: "[1] undue delay, [2] bad faith or dilatory motive on the part of the movant, [3] repeated failure to

---

[12] Jaiyong argues that he "falls within the Rule 15(a)(1) deadline to amend as a matter of course, since no scheduling order governs amendment here."  Resp. at 7.  He is mistaken.  Rule 15(a)(1) provides that "[a] party may amend its pleading once as a matter of course" within: "(A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading . . ."  Fed. R. Civ. P. 15(a)(1).  Jaiyong filed his answer to TrustLabs' complaint on August 6, 2021.  Dkt. 24.  Well over 21 days have passed since then, so Jaiyong can no longer amend as a matter of course.  Instead, Jaiyong may amend his pleading only with leave of court or written consent of the adverse party.  See Fed. R. Civ. P. 15(a)(2).  TrustLabs' opposition to Jaiyong's Motion for Leave indicates it has not consented to such an amendment.

United States District Court
Northern District of California

1  cure deficiencies by amendment previously allowed, [4] undue prejudice to the opposing

2  party by virtue of allowance of the amendment, [and] [5] futility of amendment."

3  Leadsinger, Inc. v. BMG Music Publ'g, 512 F.3d 522, 532 (9th Cir. 2008) (quoting Foman

4  v. Davis, 371 U.S. 178, 182 (1962)).  While undue delay alone is insufficient to deny a

5  motion to amend, a contemporaneous finding of prejudice, bad faith, or futility justifies

6  denying a motion for leave to amend.  Trans Video Elecs., Ltd. v. Sony Elecs., Inc., 278

7  F.R.D. 505, 507–08 (N.D. Cal. 2011).  Additionally, "[f]utility alone can justify the denial

8  of a motion for leave to amend."  Nunes v. Ashcroft, 375 F.3d 805, 808 (9th Cir. 2004).

9  **IV.    DISCUSSION**

10      The Court addresses the Rule 15 factors in the following order: (A) undue delay,

11  (B) prejudice to the plaintiff, (C) bad faith, (D) repeated failures to cure deficiencies, and

12  (E) futility.

13      **A.    Undue Delay**

14      TrustLabs contends that the Court should deny leave to amend because Jaiyong

15  unduly delayed filing this motion.  Pl. Opp. at 7–9.  According to TrustLabs, Jaiyong did

16  not act diligently because he knew of the facts supporting his proposed counterclaims

17  before TrustLabs even filed its lawsuit and he "did not 'mov[e] for leave shortly after

18  receiving relevant discovery[,]'" making his nearly two-year delay in filing unjustified.  Id.

19  at 8.  Jaiyong argues that he did not unduly delay seeking leave to amend because

20  discovery has not been completed yet, no date for trial has been set, and he filed this

21  motion "shortly after receiving relevant discovery from [TrustLabs]."  Mot. for Leave at 5.

22      When evaluating the undue delay factor, the Court considers "whether the moving

23  party knew or should have known the facts and theories raised by the amendment in the

24  original pleading."  Jackson, 902 F.2d at 1388.  "Although delay is not a dispositive factor

25  in the amendment analysis, it is relevant, . . . especially when no reason is given for the

26  delay."  Lockheed Martin Corp. v. Network Sols., Inc., 194 F.3d 980, 986 (9th Cir. 1999)

27  (citations omitted).  "[L]ate amendments to assert new theories are not reviewed favorably

28  when the facts and the theory have been known to the party seeking amendment since the

United States District Court
Northern District of California

1  inception of the cause of action."  Acri v. Int'l Ass'n of Machinists & Aerospace Workers,

2  781 F.2d 1393, 1398 (9th Cir. 1986).

3       Jaiyong brings these counterclaims nearly two years after the complaint was filed,

4  even though little (if any) new evidence has come to light.  Jaiyong knew of the facts

5  giving rise to his claims long before he filed this motion on July 17, 2023.  According to

6  Jaiyong's own allegations, he knew of his (1) breach of contract claims as early as

7  November 21, 2020, when TrustLabs and Counter-Defendants failed "to provide [him]

8  with his entitled token grants," (CC ¶¶ 245–47, 270); (2) wrongful termination claims as

9  early as July 7, 2020, when his employment was terminated (id. ¶¶ 9, 95, 169–71, 286,

10  295); (3) coercion claims as early as July 7, 2020, when his employment was terminated,

11  or as late as April 9, 2021, when TrustLabs filed this lawsuit (id. ¶¶ 141–43, 166, 178–88,

12  307–08); (4) unjust enrichment claims as early as July 7, 2020, upon the "unwarranted

13  removal from his role as CEO and his seat on the Board," (id. ¶ 315); (5) securities law

14  violation claims as early as July 7, 2020, (id. ¶¶ 72, 91–94, 97–98, 167–68); (6) IIED

15  claims as early as July 7, 2020, when TrustLabs allegedly "fabricat[ed] allegations of

16  'erratic behavior' to justify [his] termination," (id. ¶ 334); and (7) breach of fiduciary duty

17  and aiding and abetting breach of fiduciary duty as early as July 7, 2020, when TrustLabs

18  and Counter-Defendants "remov[ed] [him] from his position of CEO" and "depriv[ed] him

19  of his shareholder rights," (id. ¶ 341a).  So, at the outset of this litigation, on April 9, 2021,

20  Jaiyong knew all of the facts giving rise to his claims but did not file this motion until July

21  17, 2023.

22       Jaiyong does not offer a reasonable justification for his two-year delay.  First,

23  Jaiyong argues that he acted diligently in moving for leave to amend "shortly after

24  receiving discovery from [TrustLabs]."  Reply at 7–8.  However, Jaiyong fails to cite any

25  documents, facts, or theories that he gleaned from the discovery period that were

26  unavailable to him at the outset of this case.  Second, Jaiyong argues that he acted

27  diligently by moving for leave to amend shortly after "knowing of the fact that the alleged

28  act as committed by [TrustLabs and Counter-Defendants] amount[ed] to serious violations

United States District Court
Northern District of California

of [his] rights." Mot. for Leave at 5. However, as discussed above, there is little doubt that Jaiyong knew or should have known of these facts and theories at the time TrustLabs filed its complaint. Jaiyong could have included these counterclaims at the outset of the litigation (or shortly thereafter), and he offers no explanation for his failure to do so.

Instead, Jaiyong states that TrustLabs' potential redomicile to Switzerland "necessitated [his] filing of the counterclaims."[13] Resp. at 3. But TrustLabs' potential relocation to Switzerland does not justify Jaiyong's two-year-long delay in filing the present counterclaims, given that he knew of TrustLabs' alleged unlawful conduct underlying the counterclaims at the outset of the litigation. See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig., 2023 WL 2095921, at *3 ("A party has unduly delayed in bringing a motion for leave to amend when it does so long after it should have become aware of the information that underlies that motion."). At the time that TrustLabs filed its complaint in April 2021, Jaiyong knew of the facts and theories underlying the counterclaims, and unduly delayed in bringing this motion to amend without justification.[14]

Accordingly, the Court concludes that Jaiyong's unjustified delay in bringing his motion favors denying leave to amend. Because undue delay alone is insufficient to warrant denying the motion, the Court next analyzes prejudice to TrustLabs, bad faith, and

---

[13] Additionally, Jaiyong admits that his delay was strategic (1) in order to "await[] the outcome of the regulatory outcomes from the SEC, CFTC, and DOJ for the activities incurred by all similar competitors of TrustLabs[]" as well as "ongoing discovery disputes," Reply at 4, and (2) "in order to avoid negatively impacting the SAFT investors, who faced a 2-year lockup period on their investments," id. at 7. Jaiyong's strategic choice does not justify his undue delay in filing this Motion. See Trans Video Elecs., Ltd., 278 F.R.D. at 508 (finding undue delay and noting that the plaintiff "made a tactical decision not to" include a claim at the outset of the litigation).

[14] Further, TrustLabs served its responses to Jaiyong's "sole set of written discovery requests in May 2022" and "served its production of documents on September 1, 2022." Pl. Opp. at 7. Even if the Court agrees that Jaiyong is seeking to amend his complaint to assert new claims in light of what he learned through discovery, Jaiyong still delayed bringing this motion for at least ten months. See Mot. for Leave (filed July 7, 2023). Although there is no strict minimum for what constitutes undue delay, the Ninth Circuit has found that a delay of eight months is "unreasonable." See Jackson, 902 F.2d at 1388; see also AmerisourceBergen Corp. v. Dialysist W., Inc., 465 F.3d 946, 953 (9th Cir. 2006).

futility of amendment.

### B.     Prejudice to TrustLabs

TrustLabs contends that it will suffer prejudice if the Court grants this motion because the proposed amendments "raise complex new claims that are largely untethered from the factual circumstances alleged in [TrustLabs'] complaint," which will require additional discovery and analysis.  Pl. Opp. at 6.  Jaiyong argues that TrustLabs will not be prejudiced because "it is already conducting discovery relevant to issues like [Jaiyong]'s termination, compensation, and shareholder rights," and "any minor burden . . . is [] mitigated since discovery remains open."  Resp. at 6.

"The crucial factor in determining whether leave to amend should be granted is the resulting prejudice to the opposing party."  Jordan v. Los Angeles Cnty., 669 F.2d 1311, 1324 (9th Cir.), judgment vacated sub nom. Cnty. of Los Angeles v. Jordan, 459 U.S. 810 (1982).  "The party opposing amendment bears the burden of showing prejudice."  DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 187 (9th Cir. 1987).

The Court finds that TrustLabs has met its burden of showing that it will suffer prejudice if Jaiyong is granted leave to amend.  The first reason that TrustLabs will be prejudiced is that TrustLabs would have to conduct substantial additional discovery because Jaiyong's allegations are largely untethered from the factual allegations in TrustLabs' complaint.  The Ninth Circuit has often pointed to the prospect of significant additional discovery in the face of new theories in a proposed amended complaint as a showing of undue prejudice.  See AmerisourceBergen Corp., 465 F.3d at 953 (9th Cir. 2006) (finding prejudice where allowing the plaintiff to "advance different legal theories and require proof of different facts" would have "unfairly imposed potentially high, additional litigation costs"); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1161 (9th Cir. 1989) ("To put Mobil 'through the time and expense of continued litigation on a new theory, with the possibility of additional discovery,' would cause undue prejudice."); Jordan, 669 F.2d at 1324 (finding no abuse of discretion in denying a motion for leave to amend where the defendant "would have been required to conduct extensive, costly

United States District Court
Northern District of California

1   discovery in order to respond to the amended complaint"); <u>Jackson</u>, 902 F.2d at 1388

2   ("Putting the defendants through the time and expense of continued litigation on a new

3   theory, with the possibility of additional discovery, would be manifestly unfair and unduly

4   prejudicial." (internal quotation marks and citation omitted)).

5          Jaiyong argues that TrustLabs would not be prejudiced on this basis because "it is

6   already conducting discovery relevant to . . . [his] termination, compensation, and

7   shareholder rights" and that "the bulk of [his] allegations related directly to [TrustLabs']

8   claims regarding" these issues.  Reply at 3, 6.  But while TrustLabs is conducting

9   discovery into some of these issues, Jaiyong's proposed counterclaims would considerably

10  alter the scope and nature of this litigation and require significant additional discovery

11  because Jaiyong's proposed counterclaims are "largely untethered from the factual

12  circumstances alleged in [TrustLabs'] complaint."  Pl. Opp. at 6.

13         TrustLabs' complaint alleged that Jaiyong deleted the company's Slack account and

14  attempted to access other company systems after he was fired.  <u>See generally</u> Compl.  The

15  scope of discovery for TrustLabs' claims might include depositions of TrustLabs

16  executives and employees who participated in Jaiyong's employment termination,

17  depositions of individuals who observed Jaiyong's alleged "erratic behavior," evidence

18  pertaining to Jaiyong's motive and the extent of his "authorization" to delete the Slack

19  platform.  <u>See</u> Discovery Order (dkt. 87) ("Plaintiff will have to ascribe a motive to the

20  Defendant, and so there will need to be some witness testimony about what led up to the

21  deletion of the Slack account and the other attempts at access").

22         In contrast, Jaiyong's proposed counterclaims would require proof of entirely

23  different facts.  For example, Jaiyong's wrongful termination and IIED claims are based on

24  his alleged role as a whistleblower within TrustLabs.  <u>See</u> CC ¶¶ 284–87, 333–36.  His

25  breach of fiduciary duty claims allege that Counter-Defendants removed Jaiyong from his

26  position as CEO to "enrich themselves at [his] expense and the SAFT investors' expense,"

27  CC ¶¶ 342a, and "issu[ed] themselves TRU tokens while denying [him] his contractually

28  agreed token grant," CC ¶ 342f.  Jaiyong's breach of contract claims allege that TrustLabs

United States District Court
Northern District of California

and Cosman "entered into various contractual agreements" entitling him to receive TRU token grants." CC ¶¶ 267–70; see also Pl. Opp. at 10.  These claims are disconnected from Jaiyong's alleged deletion of TrustLabs' Slack account and his attempt to access other computer systems after his termination.  As a result, such claims would necessarily require TrustLabs to conduct additional, expansive discovery on each new theory of liability.  See Pl. Opp. at 6; see also Howey v. United States, 481 F.2d 1187, 1191 (9th Cir. 1973) (trial court's denial of a motion for leave to amend "might have been correct" if "extensive discovery was still needed."); Alsabur v. Autozone, Inc., No. CV 13-01689-KAW, 2014 WL 1340730, at *4 (N.D. Cal. Apr. 3, 2014) ("Prejudice typically arises where the opposing party is surprised with new allegations which require additional discovery or will otherwise delay resolution of the case.").

The second, related basis for concluding that TrustLabs will be prejudiced is that Jaiyong filed this motion long after expert discovery closed and shortly before the close of fact discovery.  See Solomon v. North American Life and Cas. Ins. Co., 151 F.3d 1132, 1139 (9th Cir.1998) (finding that the district court did not abuse its discretion in denying leave to amend based on undue delay and prejudice because the motion, made "on the eve of the discovery deadline[,]" would have required re-opening discovery and delaying the proceedings); see also Campbell v. Emory Clinic, 166 F.3d 1157, 1162 (11th Cir. 1999) ("Prejudice and undue delay are inherent in an amendment asserted after the close of discovery. . . .").

Expert discovery closed on January 16, 2023.  See Case Management Scheduling Order (dkt. 48).  At the time this motion was filed, there were 93 days remaining before the close of fact discovery and 126 days remaining before the deadline to file a dispositive motion.[15]  See Order Granting Plaintiff's Motion to Extend Fact Discovery (dkt. 91).  As TrustLabs notes, "given the discovery and dispositive motion deadlines in place . . . [it]

---

[15] These calculations are based on the July 23, 2023 extension, which set the close of fact discovery on October 18, 2023 and the deadline to hear dispositive motions on November 20, 2023.  Dkt. 91.

1    would have a limited opportunity to conduct fact discovery, no opportunity to designate

2    experts with respect to the proposed counterclaims, and an extremely abbreviated window

3    of time in which to develop and file a dispositive motion against [Jaiyong]."  Pl. Opp. at 6.

4    Granting the request to amend would likely require reopening expert discovery and

5    extending fact discovery so that TrustLabs could develop its evidence to prepare its

6    defenses—in turn, delaying resolution of the litigation.

7         This "need to reopen discovery and therefore delay the proceedings" supports a

8    finding of prejudice.  Coleman v. Quaker Oats Co., 232 F.3d 1271, 1295 (9th Cir. 2000)

9    (quoting Lockheed Martin Corp. v. Network Solutions, Inc. 194 F.3d 980, 986 (9th Cir.

10   1999); accord S. California Reg'l Rail Auth. v. Hyundai Rotem Co., No.

11   LACV1608042JAKJEMX, 2019 WL 13036411, at *10 (C.D. Cal. Aug. 1, 2019) (denying

12   a motion for leave to amend that was filed "shortly after the close of non-expert discovery"

13   and 211 days before the close of expert discovery); Zivkovic v. So. Cal. Edison Co., 302

14   F.3d 1080, 1087 (9th Cir. 2002) (affirming denial of leave to amend where motion was

15   filed five days before discovery deadline and proposed amendment would have added

16   additional causes of action that would have required further discovery); cf. Artemus v.

17   Louie, No. 16-CV-00626-JSC, 2017 WL 747368, at *4 (N.D. Cal. Feb. 27, 2017) (finding

18   no prejudice where "there are still seven months of discovery remaining" and "the factual

19   allegations underlying the new claims are largely the same").

20        For these reasons, the Court concludes that TrustLabs will be prejudiced if this

21   Motion for Leave is granted.  This factor favors denying Jaiyong's motion.

22        **C.    Bad Faith**

23        Next, TrustLabs argues that Jaiyong acted in bad faith in filing this motion because

24   Jaiyong has already pled substantially the same claims in Delaware state court.  Pl. Opp. at

25   13–14.  TrustLabs argues that this suggests that Jaiyong is seeking to raise these

26   counterclaims "to force [TrustLabs] to defend against a multiple front assault."  Id.

27   Jaiyong argues that his proposed counterclaims are "legally and factually distinct from the

28   Delaware case."  Resp. at 13–14.

United States District Court
Northern District of California

15

1
2
3
4
5
6
7
8

The non-moving party has the burden of showing bad faith under Rule 15, which can be demonstrated by offering facts that a motion was filed for a frivolous or improper purpose. See Eminence Cap., LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003); Westlake N. Prop. Owners Ass'n v. City of Thousand Oaks, 915 F.2d 1301, 1305 (9th Cir. 1990). One such improper purpose is "to prolong the litigation by adding new but baseless legal theories." Griggs v. Pace Am. Grp., Inc., 170 F.3d 877, 881 (9th Cir. 1999). The opposing party must provide "substantial[ly] competent evidence" of bad faith. Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001).

9
10
11
12
13
14
15
16
17
18

There is not sufficient evidence that Jaiyong has sought to amend in bad faith. TrustLabs argues that Jaiyong acted in bad faith because "four days before filing his Motion, [he] filed suit against the Putative Counter-Defendants in the Chancery Court of the State of Delaware," and the Delaware action "is based on the same set of alleged facts and circumstances as the amendments [Jaiyong] seeks to allege in this case." Pl. Opp. at 13. But TrustLabs cites no authority that a party acts in bad faith by seeking to add claims based on similar facts in a recently-filed state action. Moreover, this action is distinct from Jaiyong's Delaware action in some respects. Here, unlike in the Delaware action, Jaiyong brings claims relating to his termination. See generally CC (counterclaims two, three, four, and seven).

19
20

Thus, the Court concludes that there is not substantially competent evidence on the record that Jaiyong acted in bad faith. Accordingly, this factor favors Jaiyong.

21

### D.    Repeated Failure to Cure Deficiencies

22
23
24
25

This is Jaiyong's first motion to amend to add counterclaims, so there has not been a "repeated failure to cure deficiencies previously allowed." Leadsinger, Inc., 512 F.3d at 532. TrustLabs' opposition does not address this factor at all. Accordingly, this factor weighs in favor of Jaiyong.

26

### E.    Futility

27
28

Lastly, TrustLabs argues that the Court should deny leave to amend because almost all of Jaiyong's proposed counterclaims are futile. Pl. Opp. at 9. Courts apply the same

1    standard to determine whether amendment would be futile as on a Rule 12(b)(6) motion.

2    See Miller v. Rykoff–Sexton, Inc., 845 F.2d 209, 214 (9th Cir. 1988).  Thus, Jaiyong must

3    proffer "enough facts to state a claim to relief that is plausible on its face," Bell Atl. Corp.

4    v. Twombly, 550 U.S. 544, 570 (2007), by "plead[ing] factual content that allows the court

5    to draw the reasonable inference that the [counter-]defendant is liable for the misconduct

6    alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  However, the Court is "not bound

7    to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain,

8    478 U.S. 265, 286 (1986).  Additionally, Courts must construe pro se pleadings liberally

9    and hold such pleadings to a less stringent standard than those drafted by attorneys. Boag

10   v. MacDougall, 454 U.S. 364, 365 (1982) (per curiam).

11       While the finding of undue delay and prejudice alone would justify denying

12   Jaiyong's motion to leave, the fifth factor—futility—also supports a denial for all but two of

13   Jaiyong's counterclaims.[16]  Below, the Court addresses TrustLabs' two futility arguments:

14   (1) that Jaiyong's retaliation (second counterclaim), wrongful termination in violation of

15   public policy (third counterclaim), and IIED (seventh counterclaim) proposed counterclaims

16   are time-barred; and (2) that Jaiyong's breach of contract (first counterclaim), coercion

17   (fourth counterclaim), unjust enrichment (fifth counterclaim), and securities law violation

18   (sixth counterclaim) proposed counterclaims are not plausibly pled. See Pl. Opp. at 9–13.

19   For the reasons below, the Court DENIES Jaiyong's motion on futility grounds as to these

20   claims.

### 1.    Statute of Limitations

22       Jaiyong seeks to amend his answer to add counterclaims for (a) retaliation under

23   California Labor Code § 1102.5, (b) wrongful termination in violation of public policy, and

24   (c) intentional infliction of emotional distress (IIED).  CC ¶¶ 279–303, 331–39.

---

[16] TrustLabs does not raise a futility argument for Jaiyong's breach of fiduciary duty counterclaim (eighth counterclaim) or aiding and abetting breach of fiduciary duty counterclaim (ninth counterclaim).  However, for the reasons discussed above, the Court denies Jaiyong's leave to amend to add these counterclaims due to undue delay and prejudice.

United States District Court
Northern District of California

TrustLabs argues that amendment would be futile because these claims are barred by the statute of limitations.  Pl. Opp. at 9.  For the reasons below, the Court concludes that Jaiyong's proposed counterclaims are time-barred.

### a.    Retaliation (Second Counterclaim)

In his second proposed counterclaim, Jaiyong asserts a claim under California Labor Code § 1102.5, California's "general whistleblower statute."  Hawkins v. City of Los Angeles, 40 Cal. App. 5th 384, 392 (2019).  This law prohibits an employer from retaliating against an employee "for disclosing information to a government or law enforcement agency," if the employee reasonably believes this information relates to a violation of state or federal statutes or regulations.  Cal. Lab. Code § 1102.5(b).  Section 1102.5 does not specify a statute of limitations.  See id.; see also Newton v. Bank of Am., No. CV 16-09581-AB, 2018 WL 6219946, at *3 (C.D. Cal. Jan. 18, 2018).  "In the absence of a specific limitations provision, the court looks to the statutes of limitations generally applicable under state law."  Ayala v. Frito Lay, Inc., 263 F. Supp. 3d 891, 915 (E.D. Cal. 2017).  "California courts and federal district courts are split as to whether to apply a three-year limitations period or a one-year period" to section 1102.5 claims.  Khan v. SAP Labs, LLC, No. 18-CV-07490-BLF, 2019 WL 5697928, at *13 (N.D. Cal. Nov. 4, 2019); see also Ayala, 263 F. Supp. 3d at 915–17.

TrustLabs argues that, even assuming a three-year statute of limitations, Jaiyong's July 17, 2023 proposed counterclaim is time-barred because it "is predicated on [Jaiyong's] July 7, 2020 termination."  Pl. Opp. At 10.  TrustLabs is right.  "The 'latest date' on which a section 1102.5 claim can accrue is the date of the plaintiff's termination."[17]  Braz v. Delta Air Lines, Inc., No. 18-CV-06162-JST, 2019 WL 202817, at *3 (N.D. Cal. Jan. 15, 2019) (citing Minor v. Fedex Office & Print Servs., Inc., 182 F. Supp. 3d 966, 988 (N.D. Cal. 2016)).  Jaiyong filed this motion on July 17, 2023, over

---

[17] For this reason, the Court rejects Jaiyong's argument that his retaliation claim accrued after he informed TrustLabs that "he intended to provide whistleblower information to the SEC," which was subsequent to his termination.  Resp. at 9.

1   three years after his alleged unlawful termination on <u>July 7</u>, 2020.  <u>Id.</u>  Thus, absent

2   relation back, Jaiyong's claim is time-barred because Jaiyong would have had to file his

3   section 1102.5 claim within three years, at the latest—that is, on July 7, 2023.

### i.   Relation Back

5   Jaiyong argues that his retaliation claim is timely under Rule 15(c), because it relates

6   back to the filing of TrustLabs' original complaint.  Fed. R. Civ. P. 15(c).  Resp. at 9.  Rule

7   15(c)(1)(B) provides that "[a]n amendment to a pleading relates back to the date of the

8   original pleading when . . . the amendment asserts a claim or defense that arose out of the

9   conduct, transaction, or occurrence set out—or attempted to be set out—in the original

10  pleading. . . ."  <u>Id.</u>  To determine whether a claim relates back, the court must "consider

11  whether the original and amended pleadings share a common core of operative facts so that

12  the adverse party has fair notice of the transaction, occurrence, or conduct called into

13  question."  <u>Martell v. Trilogy Ltd.</u>, 872 F.2d 322, 325 (9th Cir. 1989) (citing <u>Percy v. S.F.</u>

14  <u>General Hosp.</u>, 841 F.2d 975, 978 (9th Cir. 1988)).  The Ninth Circuit has made clear that

15  the emphasis is not on the legal theory asserted, but rather on the operative facts of the claim.

16  <u>FDIC v. Jackson</u>, 133 F.3d 694, 702 (9th Cir 1998).  One way to determine whether this

17  standard is met is to "compare[ ] the original complaint with the amended complaint and

18  decide[ ] whether the claim to be added will likely be proved by the same kind of evidence

19  offered in support of the original pleading."  <u>Percy</u>, 841 F.2d at 978.

20  Here, TrustLabs' complaint and Jaiyong's proposed counterclaim for retaliation do

21  not share the same common core of facts.  TrustLabs' complaint alleges that Jaiyong

22  deleted the company's Slack messaging system without authorization and, after his

23  termination, tried to further tamper with TrustLabs' computer system.  <u>See generally</u>

24  Compl.  Jaiyong's retaliation counterclaim alleges that he was terminated in retaliation for

25  his whistleblower activities in connection with TrustLabs' alleged securities violations.

26  The evidence required to prove the claims in TrustLabs' complaint does not involve <u>why</u>

27  Jaiyong was terminated, but rather whether he had authorization to delete the company's

28  Slack platform and the other actions he took involving TrustLabs' computer systems.  In

United States District Court
Northern District of California

1  contrast, the evidence required to prove Jaiyong's retaliation counterclaim does rely on

2  why Jaiyong was terminated, and specifically evidence showing what actions Jaiyong and

3  the Counter-Defendants' took prior to his termination, including TrustLabs' alleged

4  securities violations and Jaiyong's purported whistleblower activities.

5      Jaiyong's retaliation claim is a new legal theory, depending on different facts than

6  those underlying TrustLabs' complaint.  See Williams v. Boeing Co., 517 F.3d 1120, 1133

7  (9th Cir. 2008) (concluding that a plaintiff's amended complaint did not relate back to the

8  original complaint in this situation).  For these reasons, the Court concludes that the

9  proposed amendment to add Jaiyong's retaliation claim does not relate back.  Without

10  relation back, this claim is futile because it is time-barred.

### b. Wrongful Termination in Violation of Public Policy (Third Counterclaim)

12      In his third proposed counterclaim, Jaiyong argues that he was wrongfully

13  discharged in violation of public policy.  CC ¶¶ 291–303.  California law recognizes a

14  cause of action for wrongful termination in violation of public policy—a Tameny claim.

15  See Tameny v. Atlantic Richfield Co., 27 Cal.3d 167, 172 (1980).  "Under California law,

16  claims of wrongful termination in violation of public policy are governed by the two-year

17  statute of limitations for personal injury claims."  James v. Tempur Sealy Int'l, Inc., No.

18  18-CV-07130-SI, 2019 WL 176340, at *3 (N.D. Cal. Jan. 11, 2019); see also Prue v.

19  Brady Co./San Diego, 242 Cal. App. 4th 1367, 1382 (2015) (claims for wrongful

20  termination in violation of public policy are governed by California Code of Civil

21  Procedure § 335.1, which provides a two-year statute of limitations).

22      Jaiyong alleges TrustLabs "terminat[ed] [him] in retaliation" on July 7, 2020.  CC

23  ¶¶ 286a, 295a.  See Goel v. Shah, No. C 13-3586 SBA, 2014 WL 460867, at *3 (N.D. Cal.

24  Feb. 3, 2014) ("A wrongful termination in violation of public policy claim accrues at the

25  time of discharge.") (citing Romano v. Rockwell Int'l Inc., 14 Cal. 4th 479, 501 (1996)).

26  Accordingly, he had until July 7, 2022, to file this motion.  He did not file this

27  counterclaim until July 17, 2023.  See Mot. for Leave.  For the same reasons as Jaiyong's

1    section 1102.5 claim, Jaiyong's Tameny claim does not relate back to the filing of the

2    original complaint.  Therefore, Jaiyong's claim for wrongful termination is time-barred.

3                           c.     IIED (Seventh Counterclaim)

4            In his seventh proposed counterclaim, Jaiyong alleges that TrustLabs and Counter-

5    Defendants "engaged in extreme and outrageous conduct" against him.  CC ¶¶ 334.  The

6    statute of limitations for Jaiyong's IIED claim is two years.  See Miller v. Bank of Am.,

7    Nat'l Ass'n, 858 F. Supp. 2d 1118, 1127 (S.D. Cal. 2012) (citing Cal. Civ. Proc. § 335.1).

8    "A cause of action for [IIED] distress accrues, and the statute of limitations begins to run,

9    once the plaintiff suffers severe emotional distress as a result of outrageous conduct on the

10   part of the defendant."  Cantu v. Resol. Tr. Corp., 4 Cal. App. 4th 857, 889 (1992).

11           At the latest, the statute of limitations for Jaiyong's IIED claim began to run when

12   TrustLabs filed this lawsuit—on April 9, 2021.  Jaiyong does not clearly allege at what

13   point Counter-Defendant's alleged outrageous conduct caused him to suffer severe

14   emotional distress.  However, Jaiyong does allege that Counter-Defendants' "extreme and

15   outrageous conduct"  included "[f]abricating allegations of 'erratic behavior' to justify

16   [Jaiyong's] termination," "[a]ttempting to compel [Jaiyong's] silence through non-

17   disparagement agreements," "undervalu[ing] [Jaiyong's] shares without basis,"

18   "[e]xcluding [Jaiyong] from the TRU grant or token dividend," "[w]ithholding [Jaiyong]'s

19   shareholder rights to corporate documents and information," and "making threats to coerce

20   [Jaiyong] to give up his lawful rights."  CC ¶¶ 334a–334(f).  According to Jaiyong's own

21   timeline, these are all actions that took place before and leading up to this lawsuit.  See id.

22   Accordingly, the Court concludes that, at the latest, Jaiyong suffered "severe emotional

23   distress" at the time TrustLabs filed its complaint—April 9, 2021.[18]

24   _____

25   [18] Jaiyong argues that the statute of limitations has not run because the harassment is
     ongoing.  Id.  Construing Jaiyong's pleadings liberally, he is likely referring to the
26   "continuing wrong" doctrine.  "Certain torts are subject to the continuing tort doctrine,
     under which 'the statute of limitations does not begin to run until the date of the last injury
27   or when the [tortious] acts cease.'"  Alden v. AECOM Tech. Corp., No. 18-CV-03258-
     SVK, 2019 WL 13066637, at *7 (N.D. Cal. June 14, 2019).
28           The Court rejects this argument because Jaiyong has not shown that his IIED claim
     is subject to this doctrine.  As discussed supra, Jaiyong's IIED claim alleges that

United States District Court
Northern District of California

Accordingly, he had until April 9, 2023, to assert a claim for IIED.  He did not file this motion until July 17, 2023.  See Compl.  For the same reasons described above, Jaiyong's IIED claim does not relate back to the filing of the original complaint.  Jaiyong's claim for IIED is therefore time-barred.

### d.    Conclusion on Statute of Limitations

The Court DENIES Jaiyong's motion for leave to add counterclaims two, three, and seven (retaliation, wrongful termination, and IIED) because it is apparent on the face of Jaiyong's proposed counterclaims that these counterclaims are time-barred, and thus, futile.  See Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 969 (9th Cir.2010) ("A claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations only when the running of the statute is apparent on the face of the complaint.").

### 2.    Failure to State a Claim

Jaiyong also seeks to amend his answer to add counterclaims for (a) breach of contract (first counterclaim), CC ¶¶ 264–73, (b) coercion[19] (fourth counterclaim), id. ¶¶ 304–12, (c) unjust enrichment (fifth counterclaim), id. ¶¶ 313–21, and (d) securities law violations (sixth counterclaim), id. ¶¶ 322–30.  TrustLabs argues that amendment would be

---

TrustLabs' and Counter-Defendants' actions—including undervaluing his shares, characterizing his behavior as "erratic," and filing this lawsuit—caused him severe emotional distress.  CC ¶¶ 334–38.  All of these actions took place on or before the date this lawsuit was filed.  Id.  Thus, even if TrustLabs' and Counter-Defendants' "conduct is viewed as a 'continuous whole' for which the statute of limitations does not begin to run until 'the last injurious act occurs or the conduct is abated,'" Alden, 2019 WL 13066637, at *7, Jaiyong has not alleged any facts that the TrustLabs' and/or Counter-Defendants' IIED continued after this suit was filed.  See Powell v. Wells Fargo Home Mortg., No. 14-CV-04248-MEJ, 2015 WL 4719660, at *8 (N.D. Cal. Aug. 7, 2015) (rejecting "continuing wrong" argument because the plaintiff did not allege facts demonstrating a continuing wrong); Brown v. Napa Valley Sch. Dist., No. C-11-5673 JCS, 2012 WL 1831539, at *7 (N.D. Cal. May 18, 2012) (same).

[19] Jaiyong labels his counterclaim as "coercion," but cites California authority for "malicious prosecution."  CC ¶ 305 (citing Haight v. Handweiler, 199 Cal.App.3d. 85, 88 (1988) and 1 CACI 1520 (2023)).  Jaiyong does not address this inconsistency in his response, and instead again cites California authority for "malicious prosecution."  Resp. at 11–12.  Construing Jaiyong's pleadings liberally, see Boag, 454 U.S. at 365, this order addresses both causes of action below.

futile because Jaiyong fails to state claim for each of these counterclaims.  Pl. Opp. at 9–

13.  The Court concludes that these proposed counterclaims are futile.

### a.      Breach of Contract (First Counterclaim)

Jaiyong seeks to amend his answer to add a counterclaim for breach of contract

because he entered into "various contractual agreements with TrustLabs and [Cosman]"

and these agreements entitled him to receive TRU Token grants that he never received.

CC ¶¶ 267–73.  TrustLabs argues that amendment would be futile because Jaiyong has not

pled a breach of contract claim with sufficient specificity.  Pl. Opp. at 11–12.

Under California law, a breach of contract claim requires four elements: "(1) the

existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3)

defendant's breach, and (4) the resulting damages to the plaintiff."  Oasis W. Realty, LLC

v. Goldman, 51 Cal. 4th 811, 821 (2006).  The facts alleging breach of contract, "like all

essential elements of a breach of contract" claim, must be pleaded with specificity.  Levy

v. State Farm Mut. Auto. Ins. Co., 150 Cal. App. 4th 1, 5 (2007).

With respect to the first element, in an action involving a written contract, the

plaintiff must "allege specific provisions in the contract creating the obligation the

defendant is said to have breached."  Young v. Facebook, Inc., 790 F. Supp. 2d 1110, 1117

(N.D. Cal. 2011); see also McKell v. Washington Mut., Inc., 142 Cal. App. 4th 1457, 1489

("A written contract may be pleaded either by its terms—set out verbatim in the complaint

or a copy of the contract attached to the complaint and incorporated therein by reference—

or by its legal effect."); N. County Commc'ns Corp. v. Verizon Global Networks, Inc., 685

F. Supp. 2d 1112, 1122 (S.D.Cal.2010) ("In order to plead a contract by its legal effect,

[Plaintiff] must 'allege the substance of its relevant terms.'").

Accordingly, a court may dismiss a breach of contract claim when a plaintiff fails to

allege any provision of the contract to support the claim.  See Miron v. Herbalife Int'l,

Inc., 11 F. App'x 927, 929 (9th Cir. 2001) (holding that a district court's dismissal of a

breach of contract claim was proper because the plaintiffs "failed to allege any provision of

the contract which supports their claim"); see accord In re Anthem, Inc. Data Breach

Litig., 162 F. Supp. 3d 953, 978 (N.D. Cal. 2016); Guccione v. JPMorgan Chase Bank, N.A., No. 3:14-CV-04587 LB, 2015 WL 1968114, at *7 (N.D. Cal. May 1, 2015) (dismissing a pro se plaintiff's breach of contract claim because the plaintiff did not allege any of the deed of trust's terms); Kroetch v. BAC Home Loan Servs., No. C 11-2860 MEJ, 2011 WL 4502350, at *3 (N.D. Cal. Sept. 27, 2011) (dismissing a pro se plaintiff's breach of contract claim because he failed to identify any specific contractual provision); Perez v. Wells Fargo Bank, N.A., No. C-11-02279 JCS, 2011 WL 3809808, at *18 (N.D. Cal. Aug. 29, 2011) (same).

Trustlabs argues that Jaiyong "fails to allege the specific contracts or contractual provisions he charges the Putative Counter-Defendants with breaching." Pl. Opp. at 12. TrustLabs argues that Jaiyong's allegations are vague and are insufficient to give TrustLabs and Counter-Defendants notice of the claims against them. Id. The Court agrees. Jaiyong does not refer to any contractual language or any contractual provisions that TrustLabs allegedly breached. Instead, Jaiyong states—without referencing a specific underlying contract—that "these contractual agreements established the rights and obligations of the parties involved, including the distribution of TRU Tokens and the granting of token grants to founders." CC ¶ 268.[20]

Jaiyong contends that "he is not required to identify every specific contractual term or provision allegedly breached at this stage." Resp. at 11. But even if Jaiyong is not required to quote the exact contract language, he must still "do more than assert conclusory statements." TML Recovery, LLC v. Humana Inc., 2018 WL 8806104, at *3 (C.D. Cal. Nov. 26, 2018) (citing Ashcroft, 556 U.S. at 678). Jaiyong's proposed counterclaim lacks specificity about the contracts involved and casts a wide net, listing seven different

---

[20] Jaiyong submits various photocopies of different contractual agreements but fails to allege which provision of the various contracts supports his claim. See CC, Exh. 1–6. See Kaui Scuba Ctr., Inc. v. PADI Americas, Inc., No. SACV 10-1579 DOC, 2011 WL 2711177, at *6 (C.D. Cal. July 13, 2011) ("While [the defendant] provides copies of the relevant insurance policies, . . . this does not alleviate Plaintiff's burden to allege facts setting forth the relevant terms . . . giving rise to breach.").

contractual agreements that allegedly "established the rights and obligations of the parties involved." CC ¶¶ 267–68. Jaiyong does not specify which contract and contract provision required TrustLabs and Counter-Defendants to grant him TRU Tokens, nor has the Court been able to identify such a provision. Jaiyong's conclusory statements are insufficient to plead that TrustLabs and Counter-Defendants breached a contractual provision. See e.g., In re Anthem, Inc. Data Breach Litig., 162 F. Supp. 3d 953, 979 (N.D. Cal. 2016) (finding that the plaintiffs failed to state a breach of contract claim because they did not "identify a specific contractual provision" that the defendants breached); Young, 790 F. Supp. 2d at 1117 (same). Therefore, even construing Jaiyong's pleadings liberally, he has not plausibly stated "factual content that allows the court to draw the reasonable inference that the [infringing party] is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

For these reasons, the Court DENIES Jaiyong's motion for leave to add a breach of contract claim.

### b.    "Coercion" (Fourth Counterclaim)

Next, Jaiyong seeks to amend his answer to add a counterclaim for "coercion," alleging that TrustLabs and Counter-Defendants engaged in a series of coercive actions including "unjustly removing him from his position as CEO and Board Member," CC ¶¶ 307, "attempt[ing] to coerce [him] into selling his shares" at an undervalued price, id. ¶ 308a, "pressuring him into signing a non-disparagement agreement," id. ¶ 308b, withholding a Token grant, id. ¶ 308c, and denying him access to corporate documents, id. ¶ 308d.[21] TrustLabs argues that amendment would be futile because Jaiyong fails to state claim. Pl. Opp. at 12. The Court concludes that Jaiyong's proposed counterclaim for "coercion" is futile.

### i.    Malicious Prosecution

---

[21] Jaiyong's fourth counterclaim is labeled as "civil coercion," but cites California caselaw for malicious prosecution. See CC ¶ 305. Jaiyong lists four elements for "coercion," but does not identify—nor has independent research revealed—any authority supporting the proposition that California recognizes a cause of action for "coercion" requiring the elements Jaiyong listed.

First, because Jaiyong cites caselaw for "malicious prosecution," the Court construes Jaiyong's "coercion" counterclaim as a counterclaim for malicious prosecution. Jaiyong's counterclaim for malicious prosecution fails. A cause of action for malicious prosecution requires three elements: (1) that a prior judicial action "was commenced by or at the direction of the defendant and was pursued to a legal termination in [the] plaintiff's favor, . . . (2) was brought without probable cause[,] . . . and (3) was initiated with malice." Bertero v. Nat'l Gen. Corp., 13 Cal. 3d 43, 50 (1974) (citations omitted); see also Haight v. Handweiler, 199 Cal. App. 3d at 87 ("One of the three elements necessary to support an action for malicious prosecution is a prior judicial proceeding terminated in favor of the present plaintiff.") (citation omitted)). Here, Jaiyong does not allege that a prior judicial proceeding was initiated by TrustLabs and/or terminated in his favor. Thus, Jaiyong fails plausibly allege a cause of action for malicious prosecution. See CC ¶¶ 304–12.

### ii.    "Coercion"

Second, even assuming that Jaiyong intended to bring a counterclaim for "coercion," Jaiyong does not cite—nor has independent research revealed—any authority supporting the proposition that California recognizes a cause of action for "coercion." See Hernandez v. Mallchok, No. B255580, 2015 WL 1594129, at *3 (Cal. Ct. App. Apr. 9, 2015) (noting that California does not recognize a cause of action for coercion).

Further, even if California law recognized a cause of action for coercion, Jaiyong's counterclaim fails because his allegations are conclusory. See Iqbal, 556 U.S. 678. Jaiyong states that the "elements of [a] civil coercion" claim are: "(1) a threat to commit a crime or unlawful injury, (2) intent to coerce the plaintiff to consent to an act or refrain from an act, (3) harm caused by the threats, and (4) damages." CC ¶ 305; Resp. at 12. Then, Jaiyong alleges that "Counter-Defendants . . . engaged in a series of coercive acts that have unduly pressured [him]." CC ¶ 308. These "coercive acts" include "attempt[ing] to coerce [Jaiyong] into selling his shares," id. ¶ 308a, "silenc[ing] [him] by pressuring him" to sign a non-disparagement agreement, id. ¶ 308b, withholding token grants from him, id. ¶ 308c, and denying him access to corporate documents, id. ¶ 308d. Jaiyong

26

merely recites the "elements" of coercion but fails to plead any facts describing the alleged "coercive act" and/or threats.

For these reasons, the Court DENIES Jaiyong's motion for leave to add a "coercion" claim.[22]

### c.      "Unjust Enrichment" (Fifth Counterclaim)

Next, Jaiyong seeks to amend his answer to add a counterclaim for "unjust enrichment," alleging that TrustLabs and Counter-Defendants have unjustly benefitted from removing him from his position as CEO and board member. CC ¶ 315. Jaiyong alleges that TrustLabs and Counter-Defendants have been enriched by continuing to "profit from the systems, policies, and value [he] created, while simultaneously denying him fair value for his shares in the company and withholding a token grant that he was rightfully due." Id. ¶¶ 313–321. TrustLabs argues that amendment would be futile because California does not recognize a standalone cause of action for "unjust enrichment." Pl. Opp. at 12.

There is no cause of action for unjust enrichment under California law. See Melchior v. New Line Productions, Inc., 106 Cal. App. 4th 779, 793 (2003); McBride v. Boughton, 123 Cal.App.4th 379, 387 (2004); McKell, 142 Cal.App.4th at 1490. Unjust

---

[22] Another liberal interpretation of Jaiyong's pleadings is that Jaiyong intended to bring a cause of action for violation of California Civil Code Section 52.1 ("the Bane Act"). The Bane Act provides a private right of action against a person or persons who interfere by "threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state . . ." Cal. Civil Code § 52.1 (emphasis added).

A plaintiff bringing a claim under the Bane Act must show: "(1) intentional interference or attempted interference with a state or federal constitutional or legal right," and (2) the interference or attempted interference was done through threats, intimidation, or coercion." Partanen v. Western United States Pipe Band Assoc., No. 1:21-CV-00588-BAM, 2021 WL 5145246, at *10 (E.D. Cal. Nov. 4, 2021). However, "[s]peech alone does not satisfy the threat, intimidation, or coercion requirement unless the speech is threatened violence." Id. Here, Jaiyong alleges that TrustLabs "attempted to coerce" him into selling his shares at a low value, "sought to silence" him by "pressuring him into signing a non-disparagement agreement, thereby limiting his ability to voice his concerns or express his views freely." CC ¶ 308a, 308b. Jaiyong does not allege that TrustLabs or Counter-Defendants threatened him with violence. See CC ¶¶ 166, 304–12, (alleging only legal threats), 178–88 (alleging only legal threats). Thus, Jaiyong's allegations are insufficient to support a violation of the Bane Act.

United States District Court
Northern District of California

enrichment is neither a cause of action nor a remedy, "but rather 'a general principle, underlying various legal doctrines and remedies' . . . It is synonymous with restitution." McBride, 123 Cal. App.4th at 387. However, Jaiyong argues that "[w]hile styled as unjust enrichment, [he] pleads the elements of a quasi-contract claim for restitution." Resp. at 5; see also id. at 12. Under California law, "when a plaintiff alleges unjust enrichment, a court may 'construe the cause of action as a quasi-contract claim seeking restitution.'" Astiana v. Hain Celestial Grp., Inc., 783 F.3d 753, 762 (9th Cir. 2015) ("Unjust enrichment and restitution . . . describe the theory underlying a claim that a defendant has been unjustly conferred a benefit 'through mistake, fraud, coercion, or request.'") (citation omitted).

To state a quasi-contract claim, Jaiyong must plausibly allege: "(1) that he performed certain services for [TrustLabs and Counter-Defendants]; (2) that the services were rendered at [TrustLabs' and Counter-Defendants'] request; and (3) that they are unpaid." Swafford v. Int'l Bus. Machines Corp., 408 F. Supp. 3d 1131, 1149 (N.D. Cal. 2019) (citing Summit Estate, Inc. v. Cigna Healthcare of Cal. Inc., 2017 WL 4517111, at *11 (N.D. Cal. Oct. 10, 2017)).

However, "an action in quasi-contract . . .does not lie when an enforceable, binding agreement exists defining the rights of the parties." Paracor Fin., Inc. v. Gen. Elec. Capital Corp., 96 F.3d 1151, 1167 (9th Cir. 1996); see also Lance Camper Mfg. Corp. v. Republic Indemnity Co., 44 Cal. App. 4th 194, 203 (1996). As such, a party alleging the existence of a written contract in a quasi-contract claim "must allege that the express contract is void or was rescinded" to proceed with the quasi-contract claim. See Lance Camper Mfg. Corp., 44 Cal. App. 4th at 203; see also Schulz v. Cisco Webex, LLC, 2014 WL 2115168, at *5 (N.D. Cal. May 20, 2014) ("[A] plaintiff may not plead the existence of an enforceable contract and maintain a quasi-contract claim at the same time, unless the plaintiff has pled facts suggesting that the contract may be unenforceable or invalid.") (citations omitted)).

Here, Jaiyong fails to plausibly plead a quasi-contract claim because he has not

alleged any facts suggesting that the express contracts are void or were rescinded.[23]  To the contrary, Jaiyong has alleged that "various contractual agreements" exist between him and TrustLabs and the Counter-Defendants.  See CC ¶¶ 266–73 (breach of contract counterclaim).  Although Jaiyong does not provide the exact provisions, he alleges that these contractual agreements "established the rights and obligations of the parties involved, including the distribution of TRU Tokens and the granting of token grants to the founders." Id. ¶ 628.  Under his quasi-contract claim, Jaiyong alleges that TrustLabs and Counter-Defendants "profit[ed] from the systems, policies, and value [he] created, while simultaneously denying him fair value for his shares in the company and withholding a token grant that he was rightfully due," CC ¶ 316.  Accordingly, it seems that the "various contractual agreements" between the parties covered the "same subject matter" that Jaiyong alleges under his quasi-contract claim.  Lance Camper Mfg. Corp., 44 Cal. App. 4th at 203.

Because Jaiyong does not allege facts suggesting that these express contracts may be void or were rescinded.[24]  Therefore, the Court DENIES Jaiyong's motion for leave to add an "unjust enrichment" claim.

### d.    Securities Law Violations (Sixth Counterclaim)

Finally, Jaiyong seeks to amend his answer to add a counterclaim for securities law

---

[23] Nor does he plead his quasi-contract claim in the alternative, as is required when a party pleads the existence of an express contrast.  See Lance Camper Mfg. Corp., 44 Cal. App. 4th at 203.

[24] Recent cases in this District have allowed quasi-contract claims to proceed at the pleadings stage because there had yet to be a finding that a valid contract existed.  See Rejoice! Coffee Co., LLC. v. Hartford Fin. Servs. Grp., Inc., No. 20-CV-06789-EMC, 2021 WL 5879118, at *10 (N.D. Cal. Dec. 9, 2021) (Chen, J.); Boobuli's LLC, v. State Farm Fire & Cas. Co.,562 F. Supp. 3d 469, *487 (N.D. Cal. 2021) (Orrick, J.).  By contrast, here, Plaintiff expressly claims that a valid contract governing "the rights and obligations of the parties involved, including the distribution of TRU Tokens and the granting of token grants to the founders" exists.  CC ¶ 268; see World Surveillance Grp. Inc. v. La Jolla Cove Investors, Inc., 2014 WL 1411249, *2 (N.D. Cal. Apr. 11, 2014) (dismissing claim for restitution based on unjust enrichment where plaintiff explicitly alleged existence of enforceable contract); Schulz v. Cisco Webex, No. 13-CV-04987-BLF, 2014 WL 2115168, at *5 (N.D. Cal. May 20, 2014) (concluding that "the express allegations of an enforceable contract on the face of the complaint presently preclude [the plaintiff] from asserting a quasi-contract claim based on unjust enrichment").

United States District Court
Northern District of California

1   violations, alleging that TrustLabs and Counter-Defendants violated Section 10b-5 of the

2   Securities Exchange Act and Section 25401 of the California Corporate Securities Law of

3   1968, by "failing to provide updated risk disclosures to SAFT investors," "[e]xcluding

4   [him] from the TRU token dividend," and "valuing [his] shares without disclosing the

5   potential sale of TrueUSD stablecoin." CC ¶ 326. Jaiyong further alleges that these

6   "misrepresentations" were "intentionally or recklessly" made to mislead and defraud him

7   and SAFT investors. Id. ¶ 327. The Court concludes that Jaiyong's proposed

8   counterclaim for securities law violations is futile.

9       Section 10(b) of the Securities Exchange Act prohibits "any manipulative or

10  deceptive device or contrivance in contravention of" SEC regulations "in connection with

11  the purchase or sale of any security registered on a national securities exchange." 15

12  U.S.C. § 78j(b) (2010). Under SEC Rule 10b-5, a company may not "make any untrue

13  statement of a material fact" or "omit to state a material fact necessary in order to make the

14  statements made . . . not misleading." See 17 C.F.R. § 2401.10b-5(b).

15      A securities fraud claim under Section 10(b) requires: (1) a material

16  misrepresentation or omission; (2) scienter; (3) a connection with the purchase or sale of a

17  security; (4) reliance; (5) economic loss; and (6) loss causation. Stoneridge Inv. Partners,

18  LLC v. Scientific-Atlanta, Inc., 552 U.S. 148, 157 (2008). A plaintiff's "inability to state a

19  claim for fraud under Section 10b-5 is . . . fatal to his § 25401 claims" because both

20  statutes require the court to engage in the same factual inquiry. Mohebbi v. Khazen, 50 F.

21  Supp. 3d 1234, 1252 (N.D. Cal. 2014); accord Wallack v. Idexx Lab'ys, Inc., No.

22  11CV2996-GPC KSC, 2013 WL 5206190, at *12 (S.D. Cal. Sept. 12, 2013) (finding that

23  dismissal of state securities claims was warranted following dismissal of federal securities

24  claims); LifeLine Legacy Holdings, LLC v. OZY Media, Inc., No. 21-CV-07751-BLF,

25  2022 WL 2119122, at *6 (N.D. Cal. June 13, 2022) (same).

26      TrustLabs contests two elements of Section 10(b) of the Securities Exchange Act:

27  (i) a material misrepresentation or omission and (ii) scienter. Because the Court concludes

28  that Jaiyong does not plausibly allege a material misrepresentation or omission, it does not

1    reach the scienter element.

2           **i.**      **Material Misrepresentations or Omissions**

3          The Private Securities Litigation Reform Act of 1995 (PSLRA) requires a securities

4    fraud complaint to "specify each statement alleged to have been misleading [and] the

5    reason or reasons why the statement is misleading."  15 U.S.C. § 78u–4(b)(1); Tellabs, Inc.

6    v. Makor Issues & Rts., Ltd., 551 U.S. 308, 313 (2007).  The Ninth Circuit also applies the

7    heightened pleading standards of Rule 9(b) "to all elements of a securities fraud action."

8    Oregon Pub. Employees Ret. Fund v. Apollo Grp. Inc., 774 F.3d 598, 605 (9th Cir. 2014).

9    Rule 9(b) requires a party bringing a fraud claim to "state with particularity the

10   circumstances constituting [such] fraud . . . ."  Fed. R. Civ. P. 9(b).  This "requires . . . an

11   account of the time, place, and specific content of the false representations as well as the

12   identities of the parties to the misrepresentations."  Swartz v. KPMG LLP, 476 F.3d 756,

13   764 (9th Cir. 2007) (citing Rule 9(b)) (internal quotation marks omitted).

14         In setting forth the reasons why each challenged statement is misleading, securities

15   plaintiffs may rely on either an affirmative misrepresentation theory or an omission theory.

16   See 17 C.F.R. § 240.10b-5(b).  A statement is false or misleading if it "directly

17   contradict[s] what the defendant knew at that time" or "omits material information."

18   Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc., 63 F.4th 747, 764 (9th Cir. 2023)

19   (quoting Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 1008–09 (9th Cir. 2018)).

20         When determining if a statement is misleading, a court must apply the objective

21   standard of a "reasonable investor."  Id. (quoting In re Alphabet, Inc. Sec. Litig., 1 F.4th

22   687, 699 (9th Cir. 2021)).  While Section 10(b) and Rule 10b-5 do not create an

23   affirmative duty to disclose all material information, disclosure is required when it is

24   necessary "to make . . . statements made, in the light of the circumstances under which

25   they were made, not misleading."  Matrixx Initiatives, Inc. v. Siracusano, 563 U.S. 27, 44

26   (2011) (quoting 17 C.F.R. § 240.10b-5(b)).

27         A plaintiff must also allege that either the misstatement or omission is "material[]."

28   Khoja, 899 F.3d at 1009.  To establish materiality, "there must be a substantial likelihood

1   that the disclosure of the omitted fact would have been viewed by the reasonable investor

2   as having significantly altered the 'total mix' of information made available." <u>Basic Inc. v.</u>

3   <u>Levinson</u>, 485 U.S. 224, 231–32 (1988) (quoting <u>TSC Indus., Inc. v. Northway, Inc.</u>, 426

4   U.S. 438, 449 (1976)).  Similarly, under California law, a fact is material "if there is a

5   substantial likelihood that, under all the circumstances, a reasonable investor would

6   consider it important in reaching an investment decision." <u>Ins. Underwriters Clearing</u>

7   <u>House v. Natomas Co.</u>, 228 Cal. Rptr. 449, 453 (Cal. Ct. App. 1986).

8        Each of Jaiyong's allegations fail this pleading standard because he has not

9   identified any material false statements made by, or any material information omitted by,

10  TrustLabs and/or Counter-Defendants.

11              **(i)  "Failure to Provide Updated Risk Disclosures to SAFT Investors"**

12              **(CC ¶ 326a)**

13       Jaiyong alleges that TrustLabs and Counter-Defendants misled investors because

14  they did not provide updated risk disclosures regarding "the change from the planned

15  TrustToken platform to the TrueFi lending product."  CC ¶ 326(a).  However, Jaiyong fails

16  to specifically allege why any failure to disclose information was material.  Omissions are

17  actionable as securities fraud only where they "make the actual statements misleading"; it

18  is not sufficient that an investor personally "consider[ed] the omitted information

19  significant." <u>Markette v. XOMA Corp.</u>, No. 15-CV-3425 (HSG), 2017 WL 4310759, at *7

20  (N.D. Cal. Sept. 28, 2017) (internal quotation marks omitted).  Here, Jaiyong does not

21  specifically allege that TrustLabs' failure to update its risk disclosures was material, such

22  that a reasonable investor "would consider it important" in making an investment decision.

23  <u>TSC Indus., Inc.</u>, 426 U.S. at 449.

24       For example, Jaiyong alleges that "if [he] were an investor" he would "prefer

25  updated risk disclosures and an option to receive a refund to choose to invest in what

26  looked like a wholly different project," but the question of materiality is an objective one

27  and Jaiyong's personal preferences do not sufficiently allege whether updated risk

28  disclosures would affect a reasonable investor's judgement.  Jaiyong's other allegations

United States District Court
Northern District of California

1  that rest on this same alleged omission similarly fail to allege why that specific omission is

2  material.  See, e.g., id. ¶ 328 ("SAFT investors relied on receiving complete risk

3  disclosures"); id. ¶ 135 (alleging that Cosman offered de Lorraine and Shields a promotion

4  if they voted Jaiyong out and "proceed[ed] with the securities law violation of fraud for

5  omitting material information privy to management but not SAFT investors.").

6        Accordingly, Jaiyong does not plausibly allege that TrustLabs and/or Counter-

7  Defendants made a material misrepresentation or omission by failing to provide updated

8  risk disclosures regarding the change from the TrustToken platform to the TrueFi lending

9  product.

10            **(ii)  "Excluding Defendant from the TRU Token Dividend" (CC ¶**

11              **326b)**

12        Jaiyong also alleges that TrustLabs and Counter-Defendants misled investors

13  because they excluded him "from the TRU Token dividend while issuing tokens to

14  themselves."  CC ¶ 326b.  This allegation also fails to meet the pleading standard under the

15  PSLRA and Rule 9(b).  Jaiyong fails to identify any statements related to his exclusion

16  from the TRU Token dividend "that directly contradict what [TrustLabs and Counter-

17  Defendants] knew at that time," meaning that he has not sufficiently alleged a material

18  misstatement.  Jaiyong also fails to specifically allege why disclosure of such information

19  would have been material to a reasonable investor.  See Khoja, 899 F.3d at 1008.

20  Accordingly, Jaiyong has not plausibly alleged that TrustLabs and/or Counter-Defendants

21  made a material misrepresentation or omission by excluding him from a token dividend.

22            **(iii) "Valuing [Jaiyong's] Shares Without Disclosing the Potential Sale**

23              **of TrueUSD Stablecoin" (CC ¶ 326c)**

24        Lastly, Jaiyong alleges that TrustLabs and Counter-Defendants misled investors

25  because they "valu[ed] [his] shares without disclosing the potential sale of TrueUSD

26  stablecoin."  CC ¶ 326c.  Again, Jaiyong does not identify a specific statement containing

27  either a material falsity, see Dura Pharms., Inc., 544 U.S. at 341, or a material omission,

28  see Basic Inc., 485 U.S. at 231–32.  Jaiyong fails to specifically allege why any alleged

1   omission of the potential sale of TrueUSD (in the context of valuing his shares) would

2   affect a reasonable investor's judgement or why a reasonable shareholder might otherwise

3   consider the sale important.  For similar reasons discussed above, this allegation fails to

4   meet the pleading standard under PSLRA and Rule 9(b).  Accordingly, Jaiyong has not

5   plausibly alleged that TrustLabs and/or Counter-Defendants made a material

6   misrepresentation or omission when valuing his shares.

7        In sum, Jaiyong has failed to allege adequately any material misleading statements

8   or omissions, making his proposed "securities law violations" counterclaim futile.  For

9   these reasons, the Court DENIES Jaiyong's motion for leave to add a "securities law

10  violations" counterclaim.

## V.   CONCLUSION

12       The Court concludes that Jaiyong's counterclaims for breach of contract, retaliation,

13  wrongful termination in violation of public policy, "coercion," "unjust enrichment,"

14  "securities law violations," and IIED (counterclaims one through seven) are futile and

15  denies leave to amend for those counterclaims on that basis.  Additionally, the Court finds

16  that Jaiyong unduly delayed in bringing all of his counterclaims and that TrustLabs will be

17  prejudiced by addition of the counterclaims.  The Court denies leave to amend for

18  Jaiyong's remaining two counterclaims, breach of fiduciary duty and aiding and abetting

19  breach of fiduciary duty (counterclaims eight and nine), on that basis, and denies leave to

20  amend to add counterclaims one through seven on that basis, in the alternative.

21       For these reasons, the Court DENIES Jaiyong's Motion for Leave to File

22  Counterclaims in its entirety.

24  **IT IS SO ORDERED.**

25  Dated: March 30, 2024

26  CHARLES R. BREYER
    United States District Judge

United States District Court
Northern District of California

34